# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ALEX PAPILLION** | : | **DOCKET NO. 16-cv-273** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Alex Papillion ("petitioner"), who is represented in this matter. Doc. 1. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Darrel Vannoy ("respondent"), warden, has responded. Doc. 14.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

### A. *Conviction*

This case arises from a December 2006 incident in which the petitioner attempted to steal a vehicle from a gas station and then successfully stole a second vehicle from a nearby apartment complex. *State v. Pappillion*, 63 So.3d 414, 417 (La. Ct. App. 3d Cir. 2011). After crashing the

vehicle, he led the police on a foot chase through another apartment complex. *Id.* The petitioner indicated that he surrendered but, when an officer was about to handcuff him, he went for her gun and then pushed her down the stairs. *Id.* He pursued her down the stairs and struggled with the officer in an attempt to get her gun. *Id.*

The petitioner was charged by bill of information in the 14th Judicial District, Calcasieu Parish, Louisiana, with two counts of theft of a vehicle over $500, attempting to disarm a police officer, and second degree battery. Doc. 14, att. 9, p. 70. The state subsequently dismissed one count of the theft charge. Doc. 14, att. 10, p. 212. On March 12, 2010, the petitioner was convicted in the 14th Judicial District, Calcasieu Parish, Louisiana, of one count of theft of property over $500, attempting to disarm a police officer, and simple battery by unanimous jury vote as to the first and third charges and a vote of 11-1 on the second charge. Doc. 14, att. 15, pp. 92–99.

The state then filed a habitual offender bill and the trial court determined, following a hearing, that the petitioner was a third felony habitual offender. *Id.* at 157–96. Accordingly, the petitioner was sentenced to one term of life imprisonment without benefits for attempting to disarm a police officer, fifteen years for theft, and six months for simple battery, with all sentences to run concurrently. Doc. 14, att. 16, pp. 63–71.

### B. Direct Appeal

The petitioner appealed his convictions, habitual offender adjudication, and sentence to the Louisiana Third Circuit Court of Appeal. *Papillion*, 63 So.3d at 417. There he raised several assignments of error through counsel and pro se. Relative to the instant petition are the following:

1. The petitioner's Sixth Amendment rights were violated by a conflict with his attorney before and during trial.

2. Trial counsel was ineffective for failing to object to the exclusion of the responsive verdicts.

*Id.* at 418. The Third Circuit reviewed these claims on the merits and denied relief. *Id.* at 432–35. The petitioner then sought review in the Louisiana Supreme Court and that review was denied on November 18, 2011. *State v. Papillion*, 75 So.3d 447 (La. 2011). He did not file a petition for a writ of certiorari in the United States Supreme Court. Doc. 1, p. 3.

### C.  *State Collateral Review*

The petitioner filed a pro se application for post-conviction relief with the trial court on or about February 15, 2013. *Id.*; *see* doc. 1, att. 2, p. 7. Counsel then filed a supplemental application for post-conviction relief on his behalf on February 22, 2013. Doc. 1, att. 3, pp. 2–20. Relevant to the instant petition, the petitioner claimed in his supplemental application that he received ineffective assistance by his trial counsel and appellate counsel based on several alleged instances of deficient performance. Doc. 1, att. 2, pp. 10–12; doc. 1, att. 3, pp. 6–17. He also claimed that a provision of the Louisiana Code of Criminal Procedure was unconstitutional in permitting conviction by a non-unanimous jury verdict. Doc. 1, att. 3, pp. 17–18.

The trial court denied relief on the claims in the supplemental application, stating that the supplemental application "[failed] to assert any novel claims that could be dealt with through Post-Conviction Relief, which were not already dealt with and denied in the Petitioner's *Pro Se* Application." Doc. 1, att. 19, p. 2. The Third Circuit disagreed and remanded the matter to the trial court for reconsideration. Doc. 1, att. 20, pp. 2–3. The trial court thus ordered the state to respond to the supplemental application and adopted the state's answers as its reasons for denying the relief. Doc. 1, att. 21, p. 2. The Third Circuit then affirmed the trial court's ruling. Doc. 1, att. 24, p. 2. The petitioner sought review in the Louisiana Supreme Court which denied relief on February 26, 2016. Doc. 14, att. 2, p. 140.

### D.  Federal Habeas Petition

The petitioner then filed the instant petition in this court through counsel on February 27, 2016. Doc. 1. Here he raises the following claims:

    1.  Ineffective assistance by trial counsel based on the following alleged incidents:

        a.  Existence of an actual conflict of interest based on a breakdown in the attorney-client relationship and petitioner's accusations of ineffective assistance prior to trial.

        b.  Failing to engage in pretrial investigation, including but not limited to locating witnesses who supported the petitioner's defense.

        c.  Failing to negotiate, convey, and engage in pre-trial plea negotiations or permit petitioner's participation therein.

        d.  Failing to object to truncated jury instructions.

    2.  Ineffective assistance by appellate counsel due to his failure to adequately review, raise, and argue the trial court's errors and to exhaust review of those claims.

    3.  Unconstitutionality of the Louisiana Code of Criminal Procedure's provision permitting non-unanimous jury verdicts in non-capital criminal cases.

Doc. 1, att. 1, pp. 1–2.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

### A.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v.*

*Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is only tolled, however, while applications for state review are pending and not between resolution of state review and the filing of the federal habeas application. *See Carey v. Saffold*, 122 S.Ct. 2134, 2138 (2002). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Procedural Default and Exhaustion of State Court Remedies

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to

satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[1] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C.  General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

---

[1] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 850 (2005), quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519–20 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

### A. Timeliness

Here the petitioner's conviction became final on February 17, 2012, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Accordingly, **364 days** accrued against his one year limit before he filed his application for post-conviction relief on February 15, 2013. The statutory time limit was tolled until the Louisiana Supreme Court denied relief on February 26, 2016. Thus one more day accrued before the instant petition was filed on February 27, 2016, making the petition timely under applicable federal law.

### B. Exhaustion of State Court Remedies and Procedural Default

The respondent asserts that the failure to investigate portion of petitioner's ineffective assistance of trial counsel claim was not adjudicated on the merits and is thus subject to procedural default. On the ineffective assistance claims, the trial court adopted the reasoning in the state's opposition with the following statement:

> The Court hereby adopts the answer put forward by the District Attorney's Office as its reasons for denying Petitioner's Supplemental Application for Post-Conviction relief. Additionally, the Court notes Petitioner's trial counsel, Mr. Todd Clemons, is a highly-qualified criminal defense attorney, and it is not this Court's practice to get involved in dictating trial strategy to the attorneys appearing before it.

Doc. 1, att. 21, p. 2. The state's opposition to the failure to investigate portion of the ineffective assistance claim read as follows:

> The petitioner claims that his trial counsel was ineffective. He points to various arguments as to counsel's ineffectiveness that he has made in other

-9-

> briefs, but he fails to specifically delineate these arguments in brief here. Therefore, these issues should be deemed abandoned and not considered by this Honorable Court. Uniform Rules of Court Rule 2-12.4; *State v. Lewis*, 2009-846 (La.App. 3 Cir. 4/7/10), 33 So.3d 1046, 1060.

Doc. 14, att. 7, p. 214. The trial court's ruling on the ineffective assistance claims was upheld without comment by the Third Circuit. Doc. 1, att. 24, p. 2. The Louisiana Supreme Court upheld the ruling on the ineffective assistance claims with the following statement: "Denied. Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Doc. 14, att. 2, p. 140. It then went on to "attach hereto and make a part hereof the District Court's written reasons denying relator's application." *Id.*

Although the trial court adopted the state's reasons for denying the ineffective assistance claims, including the petitioner's failure to fulfill a procedural requirement, the Louisiana Supreme Court was the last state court to render a judgment on those claims.[2] There is no basis for finding that its ruling was anything short of an adjudication on the merits for all portions of the ineffective assistance claim. Accordingly, the respondent cannot show lack of exhaustion or procedural default for any part of that claim.

All of the other claims raised above were exhausted in the state courts and reviewed on the merits. Therefore there is no basis for procedural default.

---

[2] Under the look-through doctrine, federal habeas courts are directed to view subsequent unexplained rulings by state courts as resting on the same grounds as the last reasoned opinion of a lower state court. *Ylst v. Nunnemaker*, 111 S.Ct. 2590, 2593–96 (1991). A judgment is unexplained if its "text or accompanying opinion does not disclose the reason for the judgment." *Id.* at 2594. Here, brief though it was and despite the incorporation of the trial court's reasoning, the Louisiana Supreme Court also made reference to federal law grounds (through citation to *Strickland*) in denying relief on the ineffective assistance claims. Accordingly, we see no basis for looking through that opinion and determining whether a procedural bar was imposed by the district court in its adoption of the state's response.

### C. *Substantive Analysis*

Having determined which claims are properly before this court, we review them under the standards described above.

#### 1. *Ineffective assistance of trial counsel*

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

Here the petitioner claims ineffective assistance based on several alleged deficiencies by trial counsel. We review each one under the standard above.

> **a. Existence of an actual conflict of interest based on a breakdown in the attorney-client relationship and petitioner's accusations of ineffective assistance prior to trial.**

The standard applicable to allegations that a criminal defendant's counsel was damaged by an actual conflict of interest "differs substantially from the *Strickland* standard generally

applicable to Sixth Amendment ineffectiveness claims." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). *Strickland*, as outlined *supra*, depends on a showing that counsel's performance fell below an objective standard of reasonableness. An actual conflict of interest, on the other hand, occurs "when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused **by choosing between or blending the divergent or competing interests of a former or current client**." *Id.* (citations omitted) (emphasis added).

The petitioner first alleges that an actual conflict of interest existed because his trial attorney, Todd Clemons, was appointed to an ad hoc term as judge in the Fourteenth Judicial District during the course of the petitioner's case. He alleges that Clemons thereafter began "[s]eeking to extract himself from the burden of petitioner's trial" because the case "no doubt intruded upon the laurels provided by serving on the bench . . . ." Doc. 1, att. 1, p. 15. However, as the respondent points out, Clemons completed his term as judge by the end of March 2009, before the March 2010 trial.[3] The petitioner does not explain how Clemons' prior term as judge presented an actual conflict of interest in his representation.

The petitioner also argues that a conflict existed due to discord with Clemons over how representation was conducted during trial. He also alleges that Clemons did not prepare for trial and displayed "utter disengagement" during the petitioner's post-verdict motions, habitual offender proceedings, and sentencing. Doc. 1, att. 1, pp. 14–19. In support he points out that Clemons attempted to terminate his representation of petitioner and withdraw as counsel on June 28, 2010, the day of the petitioner's habitual offender hearing.

---

[3] *See* doc. 14, att. 9, pp. 161–72 (Motions for Continuances filed by Clemons, establishing that his term began in February 2008 and indicating that it ended some time before March 26, 2009, when Clemons sought a continuance based on needing additional time to review discovery and prepare for trial).

While these contentions might provide an independent basis for determining that the assistance rendered was ineffective, they are not sufficient to support the petitioner's claim that counsel labored under an actual conflict. The petitioner points to no current or former client who outranked him in Clemons' loyalties. Accordingly, the petitioner shows no right to federal habeas relief.

### b. Failing to engage in pretrial investigation, including but not limited to locating witnesses who supported the petitioner's defense.

The petitioner next alleges that trial counsel was ineffective in preparing for trial. Specifically, he contends that trial counsel failed to subpoena two, possibly three, eyewitnesses to the incident giving rise to his conviction.

As the petitioner himself notes, claims based on uncalled witnesses must be supported by a demonstration that the proposed witness was available and that his testimony would have been favorable to the defense. Doc. 1, att. 1, p. 20 (citing *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)). Here the petitioner names two of these witnesses, identifying the third only as "Darrell." He also indicates the lengths to which he went to apprise trial counsel of their locations and materiality to his defense, through letters sent to Clemons before trial. *See* doc. 1, att. 4, pp. 21–24; doc. 1, att. 5, pp. 1–8. However, he fails to make any showing of the proposed witnesses' availability or of the exculpatory nature of their testimony beyond his own self-serving allegations. Accordingly, he cannot show ineffective assistance based on failure to procure these witnesses.

The petitioner raises no other specific assertions based on Clemons' alleged failure to adequately prepare for trial. Accordingly, he establishes no right to federal habeas relief.

### c. Failing to negotiate, convey, and engage in pre-trial plea negotiations or permit petitioner's participation therein.

As the Supreme Court has repeatedly held, a defendant's right to counsel includes the plea-bargaining process. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (citations omitted). In order to prevail on a claim of ineffective assistance based on failure to secure a plea bargain, a petitioner must show

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Here the petitioner alleges that Clemons was engaged in plea negotiations, but that he did not communicate these discussions to the petitioner or allow him to participate in the negotiations. The petitioner also alleges that he repeatedly urged Clemons to procure a plea bargain.

The petitioner states that Clemons' notes show that Clemons made an initial offer of four years with no habitual offender bill and that another notation references a sentencing range of 18 to 21 years. The notes on which petitioner relies do not establish what, if any, counter offers were made by the prosecution. *See* doc. 1, att. 26. However, they do support the notion that counsel engaged in attempts to procure a plea deal for his client. *Id.* Meanwhile, letters sent by the petitioner indicate that he wished to get out of jail and that he believed he had some leverage based on a promise to drop a civil suit against the police department and his contention that he had received an illegal sentence for an earlier offense. Doc. 1, att. 4, pp. 21–24.

Under the standards set forth above, the petitioner has not established that Clemons performed deficiently with respect to plea negotiations. He establishes no reasonable probability

that, but for Clemons' alleged deficiencies, a plea deal would have otherwise been presented to and accepted by the court. He also fails to show how better communication from Clemons might have improved his chances of receiving a plea deal. Accordingly, he demonstrates no right to federal habeas relief.

### d.   Failing to object to truncated jury instructions.

Finally, the petitioner alleges that Clemons performed deficiently by not objecting to the jury instructions offered on responsive verdicts to the attempted disarming of a peace officer charge. He points out that due process requires that the jury be instructed on lesser-included offenses when the evidence would rationally permit them to convict the defendant of that offense. *Keeble v. United States*, 93 S.Ct. 1993, 1995 (1973); *see Beck v. Alabama*, 100 S.Ct. 2382, 2389 (1980) (extending requirement to the states). The respondent does not contest this requirement or argue that the lack of objection was warranted. Instead, he contends that the petitioner cannot show adequate prejudice under this claim because he cannot show a likelihood that he would have otherwise been convicted of a lesser included offense.

In reviewing this claim, the Third Circuit noted:

> [A]lthough battery of a police officer and aggravated assault are responsive verdicts of disarming of a peace officer, the record is sufficient to determine the merits of Defendant's claim, and it does not support Defendant's claim that his counsel was ineffective for failing to object to the exclusion of these verdicts. The jury's verdict of attempting to disarm a peace officer was clearly supported by the evidence adduced at trial—with the use of force and without the consent of Officer Willson, Defendant attempted to take possession of her service gun while holstered on her person. This evidence to support this conviction, however, would not satisfy the elements of the responsive verdicts of battery of a police office [*sic*] and aggravated assault. As such, the responsive verdicts allowed under La. Code Crim. P. art. 804 were not appropriate in the trial of this matter and were, therefore rejected by trial court.

*Papillion*, 63 So.3d at 434–35. The petitioner has not presented any challenge to this finding beyond a conclusory assertion that "[t]he evidence adduced at trial would clearly have supported a conviction for either" lesser offense. Doc. 1, att. 1, p. 25. Therefore the petitioner has not shown adequate prejudice from counsel's failure to object. Moreover, he has not shown deficient performance because he fails to establish that such an objection was warranted. Accordingly, he has not shown a right to federal habeas relief under this claim.

### 2. *Ineffective assistance by appellate counsel*

The petitioner next alleges ineffective assistance by his counsel on direct appeal, Mark Foster, due to the latter's failure to raise certain claims during that process.

As the petitioner points out, the right to effective assistance of counsel extends to the first direct appeal taken as of right. *Evitts v. Lucey*, 105 S.Ct. 830, 834–35 (1985). To render effective assistance, the appellate attorney need not advance *every* argument, regardless of merit, urged by the appellant . . . ." *Id.* (citing *Jones v. Barnes*, 103 S.Ct. 3308 (1983)) (emphasis in original). However, the attorney "must be available to assist in preparing and submitting a brief to the appellate court . . . and must play the role of an active advocate rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim." *Id.* at 835 (citations omitted).

The *Strickland* standards outlined above are also used to evaluate claims of ineffective assistance by appellate counsel. *See Smith v. Murray*, 106 S.Ct. 2661, 2667 (1986). However, it is easier to satisfy *Strickland* when appellate counsel erroneously failed to file a merits brief. *Smith v. Robbins*, 120 S.Ct. 746, 765–66 (2000).  Where appellate counsel files a merits brief but does not raise certain claims, "it is difficult to demonstrate that counsel was incompetent." *Id.* at 765. "Generally, only when ignored issues are **clearly stronger** than those presented, will the

presumption of effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)) (emphasis added).

Here the petitioner points to Foster's failure to raise claims relating to *voir dire* and prosecutorial misconduct. We review these to determine whether petitioner has shown sufficient strength to render their omission deficient and prejudicial under *Strickland*.

### a.   Voir dire claims

The petitioner claims that Foster failed to research and raise claims based on: (i) racial discrimination by the prosecution in jury selection, as prohibited in *Batson v. Kentucky*, 106 S.Ct. 1712 (1986) ("*Batson* claim") and (ii) the trial court's denial of a defense challenge for cause.

### i.   *Batson* claim

When a defendant raises a *Batson* challenge the trial court considers the issue through a three-step inquiry. *Batson*, 106 S.Ct. at 1723–24. First it must determine whether the defendant has made a prima facie case for discrimination. *Id.* at 1723. The burden then shifts to the prosecution to articulate a race-neutral explanation for the challenge. *Id.* at 1723–24. Lastly the court determines whether the defendant has established purposeful discrimination. *Id.* at 1724. The final step is based on the "persuasiveness of the [prosecution's] justification," but it remains the defendant's burden of proof. *Purkett v. Elem*, 115 S.Ct. 1769, 1771 (1995) (per curiam).

On both state and federal review of *Batson* claims, the trial court's determination is a finding of fact and entitled to great deference. *See Murphy v. Dretke*, 416 F.3d 427, 432 (5th Cir. 2005); *State v. Collier*, 553 So.2d 815, 818 (La. 1989). Accordingly, we evaluate this claim's likelihood of success on appellate review with due deference to the trial court's findings.

Here the defense raised a *Batson* challenge based on the prosecution's use of strikes against three of the four African-Americans in the prospective jury pool. Doc. 14, att. 12, p. 230.

The prosecution responded by providing reasons for the three strikes. *Id.* at 230–35. After hearing argument, the trial court found that the defense had not met its burden of showing racial discrimination. *Id.* at 235–36. Accordingly, it rejected the *Batson* challenge. *Id.* The petitioner now claims that the trial court's ruling would have been overturned, had this claim been raised on appeal because the failure to strike white prospective juror Julius Sonnier showed that the reasons offered by the prosecution for striking the African-American prospective jurors were pretextual.

The three strikes at issue related to Linda DeJean, Zachary Cole, and Eranica Jackson. *Id.* at 231–35. The prosecution explained the strike against DeJean based on her familiarity with a case involving allegations of police brutality. *Id.* at 231. The defense asserted that DeJean's connection with this case was remote, though it admitted that the victims were relatives of hers and that DeJean had stated that she saw their wounds. *Id.* at 234. The trial court accepted the justification as to DeJean, noting that "this case is specifically about an incident involving . . . an individual and a police officer" and that "[t]he factual scenario [in the case DeJean described] being too close to that, I would find that to be race neutral . . . ." *Id.* at 236.

As explanation for striking Cole, the prosecution offered:

> [H]e's the one who said when he was a young man that he was involved in committing assaults with law enforcement officers. He said he's over it at this time, but he said when he was 18 or 19, like anybody else, when I asked him what type of things was he doing with law enforcement officers he said, "Well, I was just committing assaults against them." He said, "I don't feel the same way now. I respect them;" but certainly, Your Honor, someone who has assaulted a police officer . . . there is no way we feel he should serve on this jury.

*Id.* at 232. The defense asserted that Cole had only admitted to being charged with assault of police officers, not actually committing the assaults. *Id.* at 233–34. It also contended that he had shown sufficient rehabilitation, based on Cole's statements that he now had "utmost respect for the law"

and "felt like he could be extremely fair under these circumstances." *Id.* The court nonetheless determined that the strike had been race-neutral. *Id.* at 235–36.

Finally, the prosecution justified its strike against Jackson based on her statement that she did not want to stand in judgment of others. *Id.* at 232. The prosecutor added:

> I think she's the only juror that said that so far, that she didn't want to stand in judgment of another person, that that would bother her that her vote would actually send somebody away, and I think that's a predisposition leaning towards voting that all things are equal, not guilty as opposed to guilty.

*Id.* at 232–33.

The defense challenged this representation. He offered: "I don't recall Ms. Jackson saying that she could not stand in judgment of someone. She may have made some allusion to the fact that it's difficult to judge someone, but I think that's human nature." *Id.* at 233. The trial court disagreed, stating, "I have noted . . . that she said she would have difficulty in judging a person."[4] *Id.* at 235.

By way of challenge to the trial court's finding of no pretext, the petitioner relies on the fact that no strike was issued against white juror Julius Sonnier. The petitioner alleges that Sonnier expressed "a reluctance to follow the law as prescribed by the Court and the State of Louisiana— including but not limited to his proclaimed inability to sit in judgment of Petitioner, which was seemingly of no concern to the State as Mr. Sonnier was white . . . ." Doc. 1, att. 1, p. 28. The petitioner does not identify where Sonnier's statements on his reluctance to follow the law or his

---

[4] Neither party identifies the location of Jackson's statements within the voir dire transcript. We note, however, that only one prospective juror responded to the prosecutor's question of whether "anybody on the panel here . . . has a problem standing in judgment of another person?" Doc. 14, att. 11, p. 129. That prospective juror, who was not named in the transcript but can nonetheless be identified as female based on the prosecutor's pronoun use, stated: "I do because I don't want to judge the wrong thing and then the person is actually innocent of what they had been accused [of]." *Id.* at 130. She also agreed that fear of making a mistake would be intimidating to her. *Id.* Thus the petitioner presents no basis, and we have found none in the record, for questioning the trial court's finding as to Jackson's statements.

inability to judge the petitioner can be located in the voir dire transcript. However, a review of that transcript reveals the following exchange on the petitioner's right against self-incrimination:

> **The Court:** Let me talk to you then about that then, Mr. Sonnier. All right. You said that you would hold that against an individual if they didn't take the stand?

> **Prospective Juror:** Well, I would like to hear a guy deny it, just – I wouldn't really hold it against them, but for me to be truly convinced that he's innocent, I would have to hear his side.

> **The Court:** Well, you understand that the burden is on the State to prove that they're guilty beyond a reasonable doubt.

> **Prospective Juror:** Yes, I understand that.

> **The Court:** And when I told you about accepting the law, whether you agree with the law in principle or not, the law is that an individual has a [c]onstitutional [r]ight not to testify for whatever reason. I mean I've had people, their attorneys tell them that they're just not good spokespersons. There could be a thousand reasons, but they're not required to do so and I need to make certain that none of you would hold that against them and give the defendant a fair trial even if they decided not to testify. And, if you don't feel that you could be fair if they didn't, that's what I need to know.

> **Prospective Juror:** Well, actually I said it – I probably shouldn't have – what I mean was, if I could hear the guy, I would be more convinced of his innocence. So I would not necessarily – I would not hold it against him if he didn't speak, but it would weigh heavily for him being innocent if he did speak.

> **The Court:** You're just saying you would obviously have a preference to hear from the individual that has been charged with an offense?

> **Prospective Juror:** That's correct.

> **The Court:** But you could accept the fact that he has a right not to do so and you would not hold him to that. You would hold the State to their burden.

> **Prospective Juror:** That's correct.

> **The Court:** All right.

Doc. 14, att. 11, pp. 28–29. When asked thereafter by the prosecutor whether he felt there was any reason he could not be a fair and impartial juror, Sonnier answered, "No." *Id.* at 60.

Sonnier also stated that he was not sure if he could decide whether witnesses were telling the truth without hearing reasons to doubt their testimony from the attorneys. *Id.* at 206–07. The trial court then clarified how a finder of fact made credibility determinations, offering examples of several factors, and asked Sonnier again whether he was up to the task. *Id.* at 207–08. Smith stated that he was. *Id.* at 208. Finally, Sonnier indicated that his wife had been the victim of a purse-snatching. *Id.* at 209–10. The thief was never apprehended but Sonnier stated that he did not hold that against law enforcement. *Id.* at 210. He also affirmed that the incident would not prevent him from being fair and impartial toward the petitioner. *Id.* at 210, 216–17.

Although Sonnier expressed some confusion or reluctance on different issues, it appears that he was sufficiently rehabilitated. Furthermore, none of Sonnier's responses seem particularly unfavorable to the prosecution. Thus the prosecution's decision not to use a strike against him does not undermine the trial court's finding that the three challenged strikes were based on race-neutral reasons, and the record provides little support for the merits of an appeal based on the *Batson* claim.

### ii.      Challenge for cause

Under the Louisiana Code of Criminal Procedure, a prospective juror's refusal to accept the law as given to him by the court creates grounds for a challenge for cause. LA. C. CR. P. art. 797(4). However, the trial court has wide latitude in ruling on such challenges. *State v. Campbell*, 983 So.2d 810, 858 (La. 2008), *cert. denied*, 129 S.Ct. 607 (2008) (citations omitted). Its rulings are reviewed in light of the entire voir dire record and should only be reversed upon a showing that the court abused its discretion. *Id.*

The defense challenged Sonnier for cause, based on the statements excerpted in the above claim. Doc. 14, att. 11, pp. 221–22. After hearing argument, the trial court stated:

> My impression of Mr. Sonnier, first of all, [is] that he is so concerned about his ability to be fair and impartial that he came forward . . . even when he was not to be questioned again in order to discuss the issue. He did state, as correctly stated by the State, that he did not have any litmus test that he could clearly say somebody was telling the truth or not. He had some concerns that other people may have standards that he did not have.
>
> I do find that his overall responses were one of being fair and impartial. I think the issue with regard to proving is that, if I only hear one side of a side, and that's the only information I have, then basically I am going to have to believe that, which is the state of the law if there is not anything to the contrary or anything that points out that there may be another side. If it's limited to what's heard, then that has to be what they evaluate it on in this courtroom, that and the physical evidence. I do not find that he has a bias or partiality to the extent that he would be excused for cause and [I] would deny [the challenge].

*Id.* at 224–25. The petitioner offers nothing to challenge the trial court's finding of credibility and interpretation of Sonnier's statements, and we find no basis for doing so on the record before us. Accordingly, the petitioner does not show any merit to an appeal of the trial court's denial of the challenge.

### b.  Prosecutorial misconduct

The petitioner also alleges that his appellate counsel should have raised a claim of prosecutorial misconduct based on remarks made by the prosecutor in closing argument. Specifically he alleges that the prosecutor made "repeated references . . . to Petitioner's 'burden' of proof, improper attacks on defense counsel's character, and blatant references to Petitioner's pre-trial incarceration." Doc. 1, att. 1, p. 29. He points to the following statements:

> You did not hear any evidence that disputed that testimony. Think about that. You didn't hear any evidence from Mr. Papillion's attorney [that] disputed that evidence that we presented to you, that testimony.
>
> There was no evidence presented to you to dispute that fact.

His testimony was otherwise credible. And I didn't hear any other witness, not that the Defense has an obligation to put on any evidence or testimony in this case, but I didn't hear anyone else contradict what he said.

I didn't hear anything in that case that contradicted how she said that happened.

I don't recall any facts or evidence contradicting that that occurred.

You know[,] there is something to be said about professionalism and I mean that's the first time in my 13 years of practicing that I've heard that kind of attack. But you know, I should have warned you all because it's fairly typical of defense attorneys.

Mr. Clemons didn't tell you—he didn't [put] anybody on to tell you them [*sic*] his car arrived, whether the video was running. How [*sic*] he doesn't have to tell you that but you need to consider it.

He's been in jail I think since 2006.

He's on his second attorney. He had legal counsel.

That pertinent to a civil rights claim or something that he could bring against Lake Charles Police Department if he want[s] to. Four years later I don't think he's going to. Why not, if he has all this proof and it's relevant to his case and you shouldn't convict him of these crime[s] because he was battered and brutalized by the police.

*Id.* at 29–30.

Article 774 of the Louisiana Code of Criminal Procedure provides the scope of closing argument as follows:

The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice.

The trial judge has broad discretion to control the scope of argument but prosecutors are also afforded wide latitude in selecting tactics for closing. *State v. Brumfield*, 737 So.2d 660, 666 (La. 1998). A conviction will not be overturned based on improper remarks at closing unless the

reviewing court is convinced that the remarks prejudiced the jury and contributed to the verdict. *State v. Snyder*, 750 So.2d 832, 846 (La. 1999) (citations omitted). "Even where the prosecutor's statements are improper, credit should be afforded to the good sense and fairmindedness of the jurors who have heard the evidence." *Id.*

After the jury was sworn in the court offered general instructions on the burden of proof and other matters. Doc. 14, att. 12, pp. 247–48. It reminded the jury in particular "that the burden is on the State to prove the elements of the charges that have been alleged" and "the Defendant may present evidence but is not obliged to do so, again the burden being on the State to prove their elements." *Id.* at 248.  During closing argument the following objection was also offered, followed by the following admonition, in the presence of the jury:

> **Ms. Hawkins:** . . . . There was no evidence presented to you to dispute that fact.
>
> **Mr. Clemons**: Your Honor, at this point I'm going to object because we don't have to present any evidence, Your Honor, and that's the second time that comment has been made, Judge.
>
> **Ms. Hawkins:** Okay.
>
> **The Court:** And it is true that the Defense does not have to produce any evidence whatsoever.
>
> **Ms. Hawkins:** Dually [*sic*] noted.
>
> **The Court:** The State has to produce or meet their burden.
>
> **Ms. Hawkins:** Okay. Dually [*sic*] noted.
>
> **The Court:** So, we will not reference, and I would admonish that the Defense does not have to put on any evidence. The State has the burden in this case, Ladies and Gentlemen.

Doc. 14, att. 15, pp. 39–40. No other objection or admonition was made during the state's closing argument or rebuttal.[5] *Id.* at 40–49, 75–86.

It appears from the above that the jury was well aware of the fact that the state carried the burden of proof, despite any insinuations to the contrary from the state. As to the other statements, the petitioner offers no argument on the prejudicial impact of these in comparison to the weight of evidence against the petitioner. Accordingly, he shows little merit to this claim.[6]

### c.   Comparison to claims raised on appeal

Appellate counsel raised the following claims: 1) that the convictions of attempted disarming of a peace officer and simple battery violated his constitutional protection against double jeopardy; and 2) that the trial court erred in deferring its ruling on his pro se post-trial motions until after his habitual offender adjudication and sentencing. *Papillion*, 63 So.3d at 418. Petitioner offers no argument beyond the conclusory allegation that these claims were "anemic" and presented a lesser chance for reversal than the proposed claims argued above. Doc. 17, p. 9.

---

[5] After closing argument the court dismissed the jury for a break. Doc. 14, att. 15, p. 86. The following exchange then took place, outside of the jury's presence:

> **Mr. Clemons:** Your Honor, I just want the record to clearly reflect, even though I only made one objection, out of respect to the State, I want the record to clearly reflect the State's repeated direct and indirect references to the Defense and what they proved, and the record is clear we have no burden of proof. So, I just want the record to be clear about the direct references and indirect references, Judge.
>
> **The Court:** It's noted.
>
> **Mr. Clemons:** Thank you.
>
> **The Court:** And the Court has consistently advised the jury as to their burden.
>
> **Mr. Clemons:** Thank you, Judge.

*Id.* at 86–87. No request for admonition or mistrial was made.

[6] On federal review, claims of prosecutorial misconduct based on improper remarks at trial only invite relief where the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008) (quoting *Darden v. Wainwright*, 106 S.Ct. 2464, 2471 (1986)). To make this showing, the petitioner must show that the misconduct was "persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Id.* (quoting *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988)). We note that the challenged remarks were confined to closing argument. In light of the trial court's instruction and admonition, excerpted above, and the fact that the petitioner does not allege improper remarks during other parts of the trial, the petitioner appears unable to satisfy the first basis for relief. Beyond conclusory and self-serving allegations, he makes no showing that the evidence was sufficiently insubstantial. Accordingly, he also shows little merit to this claim on federal review.

Given the petitioner's failure to show that the non-raised claims presented a better likelihood of success, he has not carried his burden in showing that appellate counsel performed deficiently and is not entitled to federal habeas relief on this claim.

### 3.  *Unconstitutionality of non-unanimous jury provision*

Under Louisiana law, only ten of twelve jurors must concur to render a verdict in a non-capital criminal case. LA. C. CR. P. art. 782(A). Here the petitioner was convicted of attempting to disarm a police officer by a vote of 11-1. He alleges that Louisiana's allowance of non-unanimous verdicts violates his constitutional right to due process.

As the respondent points out, the United States Supreme Court has upheld the constitutionality of Article 782.[7] In *Johnson v. Louisiana*, it noted:

> [T]his Court has never held jury unanimity to be a requisite of due process of law. Indeed, the Court has more than once expressly said that "(i)n criminal cases due process of law is not denied by a state law . . . which dispenses with the necessity of a jury of twelve, or unanimity in the verdict." [citations omitted]. . . .
>
> Entirely apart from these cases, however, it is our view that the fact of three dissenting votes to acquit raises no question of constitutional substance about either the integrity or the accuracy of the majority verdict of guilty.

92 S.Ct. 1620, 1623 (1972); *see also Apodaca v. Oregon*, 92 S.Ct. 1628 (1972) (companion case). The Court was divided on the issue, with Justice Powell's concurrence in *Apodaca* breaking the tie. *See McDonald v. City of Chicago, Ill.*, 130 S.Ct. 3020, 3035 n. 14 (2010) (summarizing opinions).

The petitioner alleges that recent Supreme Court jurisprudence "suggests a tendency toward declaring non-unanimous verdicts unconstitutional." Doc. 1, att. 1, p. 31; *see, e.g., United*

---

[7] At the time of this challenge Article 782 required nine of twelve jurors to concur in order to render a verdict in non-capital cases. *Johnson*, 92 S.Ct. at 1622 n. 1.

*States v. Booker*, 125 S.Ct. 738, 753 (2005). However, the cases cited in support of this proposition are limited to 2000 to 2005. Since that time, the Court has repeatedly denied writs of certiorari to cases seeking to challenge the constitutionality of non-unanimous verdicts in state proceedings. *See Jackson v. Louisiana*, 134 S.Ct. 1950 (2014); *Barbour v. Louisiana*, 131 S.Ct. 1477 (2011); *Herrera v. Oregon*, 131 S.Ct. 904 (2011). Accordingly, the law of *Johnson* and *Apodaca* remains settled and the petitioner has not shown a right to habeas relief under this claim.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate

of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 18th day of October, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE